**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PAMELA BOUSQUET,

       Plaintiff,

vs.                                                CASE NO. 3:06-cv-978-J-TEM

MICHAEL ASTRUE,
Commissioner of Social Security,

       Defendant.
_____

<u>**ORDER AND OPINION**</u>

       This matter is before the Court on Plaintiff's Complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the Commissioner) of the Social Security Administration (SSA) ordering repayment of an alleged overpayment of Social Security disability insurance benefits (DIB) and denying Plaintiff's request for a waiver. Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #11, P's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #14, D's Brief). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated February 2, 2007 (Doc. #9). The Commissioner has filed the transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

       For the reasons stated below, the decision is **REVERSED AND REMANDED**.

**I.  Factual Background**

       Plaintiff, born in 1952, was found to be eligible for DIB benefits as of October 1, 1993, while she was residing in Massachusetts (Tr. 13). It was a requirement that the DIB

benefits be offset by workers compensation benefits she also was receiving (Tr. 13).  In 2002, Social Security notified Plaintiff that there had been an overpayment of her benefits.[1] After a telephone request for a waiver of the overpayment (Tr. 20), on August 2, 2002 Plaintiff filed the SSA Form 632 requesting a waiver and/or a $25 a month rate of repayment (Tr. 21).  Plaintiff indicated in the Form 632 that she had not knowingly accepted any overpayment (Tr. 23).  Plaintiff also advised Social Security in a followup telephone call that she believed the overpayment finding was in error (Tr. 20).

The SSA log reflects an entry on September 7, 2002, that the Plaintiff (identified as "w/e" presumably meaning "wage earner"[2]) was not at fault in causing an overpayment, but indicating she had the ability to repay (Tr. 29).

Subsequently, a personal conference was held on May 17, 2003.  The SSA conference notes first state, "based on the facts" Plaintiff was "at fault due to the fact that she knew the benefits were offsettable" (Tr. 31).  However, the SSA also noted that Plaintiff and her attorney had in fact reported the amount of Plaintiff's workers compensation benefits to SSA.  Notes from this same conference also contain the statement, "Further, it is undisputed that [Plaintiff] was without fault in receiving and accepting the incorrect payments."  (Tr. 31.)  However, the SSA goes on to state because the DIB payments remained the same even after workers compensation benefits were reported, and Plaintiff

---

[1]The record does not appear to contain the notification.  The first exhibit in the administrative record is a log and the first entry in the log is on July 29, 2002, indicating that claimant filed a waiver (request for a waiver) concerning the overpayment (Tr. 20).

[2]It would be helpful if the SSA would provide in the record a list of the abbreviations commonly used in its logs.  Although "w/e" is used several times, there also is an abbreviation "nh" used subsequently, apparently also referring to Plaintiff (Tr. 31).  The Court presumes "nh" stands for number holder.

did not question the lack of change in the DIB amount, Plaintiff therefore "can not be found without fault." (Tr. 31.)  Whoever prepared the notes also found Plaintiff  had the ability to repay (Tr. 31).[3]

Thereafter, on May 19, 2003, the SSA denied the waiver request concerning the alleged overpayment and ordered her to repay $10,884 within 30 days (Tr. 34-36).  Plaintiff filed a request for a hearing by an administrative law judge (ALJ) accompanied by a letter from her attorney indicating Plaintiff was not clear on how the exact amount of the overpayment was calculated (Tr. 37-38).

After more than a year passed, Plaintiff's counsel requested the status of the waiver request (Tr. 39) and was informed that the file folder with the documentation had not arrived at the Jacksonville, Florida office (Tr. 40).  When the file folder arrived in October 2004, the SSA did not find the appeal request in it and indicated the Plaintiff would have to show good cause for late filing of an appeal (Tr. 42).  Plaintiff's counsel provided the SSA a copy of the timely appeal with a SSA date stamp of July 2, 2003 (Tr. 43).  Thereafter, the SSA log indicated that the SSA apparently had lost its "copy and the case was sent to pc to file" (Tr. 44).  The SSA then arranged for a hearing (Tr. 44-46), which was held on February 16, 2005 (Tr. 141).

Neither the documents concerning the reporting of the workers compensation

---

[3]Aside from the seeming inconsistencies in the conference notes, there also is a lack of clarity.  The SSA notes state that Plaintiff believed that since her workers compensation benefit calculation was "done later" than she thought it would be, Plaintiff thought she should be entitled to keep the money (Tr. 31).  It is not clear whether that statement refers to the calculation of the workers compensation benefits or the SSA's calculation of the offset.  As stated *infra* the initial award letter from SSA indicates the SSA reduced her benefits based on workers compensation payments (Tr. 82-84).

payments, nor any log entries concerning the time period in question, are contained in the administrative record.  However, the record does contain the initial notice of award of benefits indicating Plaintiff was found to have become disabled on October 1, 1993, and first eligible to collect benefits in March 1994 (Tr. 82-84).  That notice contains a statement indicating the SSA would reduce the amount of the disability checks if workers compensation benefits plus the DIB would be more than 80 percent of Plaintiff's monthly average earnings (Tr. 83).  The notice indicates that her DIB checks would be reduced because she would be receiving both DIB and workers compensation benefits (Tr. 83-84).

At the February 2005 hearing, the ALJ stated the issues were whether there was an overpayment, whether Plaintiff was without fault, and, if so, whether repayment of $8,653 would deprive her of basic living expenses (Tr. 144).  Plaintiff's counsel replied that the last overpayment amount SSA had claimed was $10,884, but that Plaintiff had never been provided information on how the amount was calculated (Tr. 144).

Plaintiff testified that she started receiving workers compensation benefits in October 1993 (Tr. 147) and that she applied for DIB at the end of 1993. The Court notes Plaintiff reapplied for DIB in September 1994 and was awarded benefits in the latter part of 1994 based on the September 1994 application (Tr. 147).  Plaintiff's notice of award of benefits was dated December 4, 1994 (Tr. 82-84).

Plaintiff testified she and her attorney told the SSA from the beginning that she was receiving workers compensation payments and that the notice of award the SSA sent her advised her she would receive less DIB because she also received workers compensation benefits (Tr. 148).  The ALJ commented, "[b]ut they were never reduced" (Tr. 149) without

4

citation to any record.   Plaintiff's counsel then presented the initial DIB notice letter (Tr. 83-85) to the ALJ (Tr. 149).

Plaintiff stated that the workers compensation benefits she initially received were lowered after a hearing in which she was found totally disabled (Tr. 151).   She said she was aware her DIB payments were reduced by an offset because of workers compensation (Tr. 151).   Plaintiff further stated she did not receive any money from the SSA that she knew or thought was an incorrect amount (Tr. 151).

The ALJ noted the initial disability notice (Tr. 82-84) stated on the first page that Plaintiff would receive $798 a month, then discussed workers compensation reductions, but states on the second page she would receive $873 beginning in March 1994 (even though the letter is dated December 4, 1994).  The ALJ stated the letter was very confusing (Tr. 152).   He later stated that he would "assume" that the $798 is the number the SSA arrived at after reduction for workers compensation benefits (Tr. 153).

Plaintiff noted that since she received a letter two years ago stating  that there had been an overpayment, the SSA had been taking $100 a month out of her monthly DIB check (Tr. 154).

The ALJ then questioned Plaintiff as to her monthly expenses which she had reported two years earlier on the Form 632 (Tr. 159-62) and concluded he would need a more recent statement.  Those items were submitted after the hearing (Tr. 85-137).

Toward the end of the hearing, counsel for Plaintiff again stated he could not tell how the SSA arrived at the offset calculations (Tr. 163) and the ALJ stated, "... if we're able to find that out – matter of fact, I will make an effort to determine that, and then we will proffer

that to you." (Tr. 163.)

In his decision the ALJ stated that Plaintiff was not sure she was overpaid because there was never an "adequate accounting" (Tr. 14).  However, the ALJ also found, "The matter before me is **limited** to the issue of waiver of overpayment" (Tr. 14) (emphasis added).   The ALJ further stated that the only thing that was requested was a waiver and that in regard to the issue of overpayment, "even if the allegations of the claimant are true," the issue has been settled (Tr. 14).  The ALJ went on to state that, "regardless of her current request for an accounting, the overpayment has been established and its existence stands as a matter of law" (Tr. 14).

Thus, the ALJ found at this point that the only issue before him was whether the overpayment could be waived (Tr. 14-15).[4]  The ALJ stated the law disallows recovery of overpayments if the claimant is without fault "**and** recovery would deprive the person of income for ordinary and necessary living expenses or would be unfair for some other reason" (Tr. 15) (emphasis added).

In examining whether there was fault, the ALJ asked three questions pursuant to 20 C.F.R. § 404.507(c): First, did the claimant make an incorrect statement or a statement which she knew or should have known was incorrect?  Second, did the claimant fail to furnish information timely, which she knew or should have known to be material?  Third, did the claimant accept payments which she either knew or could have been expected to

---

[4]The Court notes the inherent conflict between this finding and the ALJ's statements at the hearing that the issues before him were: (1) whether or not there was an overpayment in this case; (2) whether the claimant was, or was not without, fault; and, (3) if she was without fault, whether repayment would deprive the claimant of basic living expenses or be a just result.  (*Compare* Tr. 14-15, 143-44.)

know were incorrect? (Tr. 15).  In resolving the aforementioned questions, all pertinent circumstances including age, intelligence, education and physical and mental condition should be considered.  20 C.F.R. § 404.507.

The ALJ found the above-mentioned standard was high.  He stated he would assume the claimant's testimony was credible, and that she exercised care to keep the SSA apprised of her workers compensation benefits and that she did not mislead or withhold information (Tr. 16).  However, as to the third question, the ALJ found against the Plaintiff.  He found she was intelligent and literate, aware of the offset provisions and even sought advise of counsel on the matter (Tr. 16).  "The fact that there was no change in her Title II benefit check between when she was not getting the benefits and when she was is telling" (Tr. 16).  He added "she should have know something was awry" (Tr. 16).

The ALJ found that Plaintiff's statements and actions as referenced by the conference notes (Exhibit 6, Tr. 31) and the SSA denial of waiver (Exhibit 8, Tr. 34-36)[5] made it clear:

> ...she knew there should have been some impact on her benefit amount when the workers compensation was reported and when she began to receive it.  When the benefits did not change, she had some duty to make an inquiry which she did not do.  She either knew or should have known she was receiving more benefits that she was due, and, as such, she is not without fault in causing the overpayment.

(Tr. 16-17.)

Thus, the ALJ found Plaintiff must repay the stated overpayment and was not

---

[5]Why the ALJ included the SSA denial of waiver letter in his description of "her actions" is not clear (Tr. 16).  The only action of Plaintiff referred to in the denial letter is a blanket statement she was at fault for accepting payments she should have known were incorrect as exceeding 80 percent of pre-disability earnings.

entitled to waiver (Tr. 17).   However, he further stated that even if she had not been found

to be at fault, he would still order repayment and deny the waiver request (Tr. 17-18).

Citing to 20 C.F.R. § 404.508, the ALJ noted that where the overpaid person needs

substantially all of her current income, including benefits, to meet current and necessary

living expenses, recovery would defeat the purpose of Title II (Tr. 17).   Taking note that

Plaintiff had listed a $100 monthly church donation as an expense, the ALJ determined,

"While charitable deductions are admirable, the duty to pay a debt comes first both morally

and legally." (Tr. 17.)  Using as support the fact  that the SSA had been deducting $100 a

month from Plaintiff's DIB check, and would continue doing so through November 1, 2011,[6]

the ALJ found Plaintiff could meet necessary and ordinary living expenses and thus

collection of the overpayment would not defeat the purpose of Title II (Tr. 18).

        The ALJ made three conclusions of law: (1) the claimant was overpaid benefits; (2)

the overpayment and recovery would not defeat the purpose of Title II of the Act; and,  (3)

recovery of the overpayment would not be waived (Tr. 18).

## II.  Applicable Law and Standard of Review

        Under Title 42, U.S.C. § 404(a)(1)(A), if the Commissioner determines that more

than the correct amount of payment has been made, the Commissioner may seek refund

of the excess amount or reduce future payments to recapture the amount.  However, Title

42, U.S.C. § 404(b), additionally provides that no adjustment or recovery shall be made

from a person who is "without fault if such adjustment or recovery would defeat the purpose

---

[6]The Court has not found the source for this information in the administrative record.
Plaintiff testified that the SSA had been deducting $100 a month (Tr. 154).

of this chapter **or** would be against equity and good conscience." *Id.* (emphasis added).

The Commissioner has enacted Regulations for procedures to carry out the intent of the statutory recovery provisions.  Under 20 C.F.R. § 404.902(j) and (k), the SSA shall make initial determinations, subject to administrative and judicial review, of overpayments and underpayments, and whether overpayments should be repaid.  The individual from whom recovery is sought is to be provided notice under 20 C.F.R. § 404.502a of the amount of overpayment and how it occurred, the right to seek waiver, reconsideration of the fact of overpayment or amount determination, and instructions on how to do so.

The Regulations provide that even if the SSA may have been at fault in making an overpayment, that will not excuse repayment unless the person from whom recovery is sought is "without fault."   20 C.F.R. § 404.507.  That section indicates a claimant's fault can be found if it resulted from (a) an incorrect statement to the SSA which the person knew or should have known was incorrect, (b) a failure to furnish information which the person knew or should have known to be material, or (c) acceptance of payment which he or she either knew or could have been expected to know was incorrect.  *Id.*

If the person is "without fault," the SSA may still recover the overpayment unless recovery "would defeat the purpose" of the Act or "be against equity and good conscience." 20 C.F.R. § 404.506(a).  "Defeat the purpose" is defined as depriving a person of income required for ordinary and necessary living expenses."  20 C.F.R. § 404.508(a).  If the person needs substantially all of his or her current income (including Social Security monthly benefits) to meet current ordinary and necessary living expenses, recovery would defeat the purpose of the act.  20 C.F.R. § 404.508(b).  Determination of whether an

9

individual is without fault is to be based on subjective criteria, including the person's age, intelligence, education, and physical and mental condition.  20 C.F.R. § 404.507; *Jefferson v. Bowen*, 794 F.2d 631, 633 (11th Cir. 1986).

The standard for district court review is whether there is substantial evidence "as a reasonable mind might accept as adequate" to support the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).  Such evidence must be more than a "scintilla, but may be less than a preponderance."  *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988).

If the ALJ applied incorrect law, or the decision fails to provide the district court with sufficient reasoning to determine whether the Commissioner properly applied the law, the Court has plenary review.  *Keeton v. Dep't of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## III.  Analysis

In his decision, the ALJ found that the only issue before him was whether recovery of an incorrect payment should be waived (Tr. 13).  He found Plaintiff should have known there should have been "some impact on her benefit amount when the workers compensation was reported" and when the payment amount of the DIB benefits did not change she should have inquired into the matter (Tr. 16-17).  Thus, he found Plaintiff was "not without fault" (Tr. 17).   Under the statutory and regulatory procedure, recovery must be made from a person who is not without fault.  The ALJ also found that even if Plaintiff was without fault, it would not defeat the purpose of the Act to require repayment (Tr. 17-18).

Plaintiff claims the ALJ committed three errors: (1) he failed to address Plaintiff's request that specific evidence be provided supporting the amount of the assessed overpayment; (2) he incorrectly found Plaintiff was "not without fault;" and (3) he failed to address whether recovery of the overpayment would be against equity and good conscience. (*See* P's Brief, generally.)

The Commissioner responds that Plaintiff failed to exercise her administrative remedies as to determination of the overpayment amount, that substantial evidence supports the finding that Plaintiff was not "without fault" and that as a result she was not entitled to consideration of a waiver.  (D's Brief, in general.)

The Court finds there is not substantial evidence in the administrative record to support the ALJ's decision.  Indeed, there is no evidence in the file of how the overpayment was calculated or when it occurred.  Without that evidence, the Court has nothing to review as to the ALJ's conclusion (which simply parrots the SSA's denial letter) that the Plaintiff is not without fault.

The only factual evidence in the administrative record are the initial award letter (Tr. 82-84), annual letters announcing the new benefit amount for the next year (Tr. 67, 69, 71, 73, 76, 78, 80), annual SSA-1099 statements for 1994 through 2002, which, in fact, show a workers compensation offset was withheld each year (Tr. 66, 68, 70, 72, 74, 75, 77, 79), and the Plaintiff's testimony (Tr. 143-63).

The initial award letter stated that the SSA would reduce the disability benefit amount if both the DIB and the workers compensation payments would add up to more than 80 percent of the Plaintiff's monthly average current earnings (Tr. 83).  The letter

further stated that 80 percent of the average current earnings was $2,876 (Tr. 83).

The award letter also stated that Plaintiff's checks beginning in March 1994 (the first month she was entitled to payment) would be reduced based on the workers compensation payments (Tr. 83). The SSA-1099 for 1994 showed a workers compensation offset of $353 (Tr. 81). Each subsequent year's SSA-1099 showed a workers compensation offset: $4,236 in 1995 (Tr. 79); $4,236 in 1996 (Tr. 77); $4,236 in 1997 (Tr. 75); $3,038.40 in 1998 (Tr. 74); $3,038.40 in 1999 (Tr. 72); $3,038.40 in 2000 (Tr. 70); $3,038 in 2001 (Tr. 68); and, $499.20 in 2002 (Tr. 66).

It may well be that the amount of the offset was too small in some or all years, but there is nothing in the record to show that. Nor is there any information in the record about the amount of workers compensation payments. That information would be necessary to the determination that the Plaintiff was not without fault, and the Court cannot find substantial evidence to support that determination without being able to review the evidence the ALJ relied upon.

Moreover, statements the ALJ made at the hearing and in the decision appear to conflict with the limited evidence in the record. The ALJ stated at the hearing, "But they [presumably DIB benefits] were never reduced. You just knew, knew that from the beginning they, they would be reduced?" (Tr. 149.) The initial notice of award letter was then given to the ALJ by the attorney and the ALJ then asked, "So, again, you were aware that your, your, your Social Security benefits were reduced by the Worker's Compensation calculation, correct?" (Tr. 150.) Plaintiff affirmed she was aware (Tr. 150). The ALJ then stated the initial DIB notice letter was"very confusing" (Tr. 152, referring to Tr. 82-84). He

12

later noted that the $798 Plaintiff was receiving monthly from the SSA appeared to be the total arrived at **after** reduction for workers compensation (Tr. 153).

The ALJ did not clear up the confusion, however.[7]  In his decision, the ALJ stated that Plaintiff knew "there should have been some impact on her benefit amount when the workers compensation was reported and when she began to receive it.  When the benefits did not change, she had some duty to make an inquiry which she did not do." (Tr. 16-17.)[8] However, the record including the initial award letter (Tr. 82-84) and Plaintiff's testimony (Tr. 147-48) show that Plaintiff began receiving workers compensation benefits in 1993 and had advised the SSA as to the workers compensation benefits in her initial application for DIB.  The initial award letter and the SSA-1099s all reflect that the SSA was taking the required offset based on the workers compensation payments.

Certainly, if Plaintiff had not reported the workers compensation, or reported an incorrect amount, such action would be ground for finding her "not without fault."  But the record shows Plaintiff reported the workers compensation to the SSA, and it does not indicate she reported an incorrect amount.  It may be that the SSA calculated benefits incorrectly, and, if  the miscalculation clearly resulted in Plaintiff receiving more than 80 percent of her previous monthly average income, a finding of "not without fault" would be

---

[7]At the hearing, Plaintiff's counsel raised the issue of not being provided information on how the SSA  made the overpayment determination (Tr. 163).  The ALJ stated, "Right. And if we're able to find that out – matter of fact, I will make an effort to determine that and then we will proffer that to you ...  for comment" (Tr. 163).  There is no indication, however, that the ALJ followed up on the inquiry as he said he would do.

[8]The ALJ also found that Plaintiff was credible and exercised care to keep the SSA apprised of her workers compensation benefits (Tr. 16).

justified.

Without the evidence as to the SSA's calculations, however, there is no evidence which the Court can find to support the ALJ's decision.    Thus, the decision is not substantially supported by the record.   Although the Court's review is limited in scope, it is required to scrutinize the record to determine if substantial evidence exists to support the Commissioner's findings.   *Viehman v. Schweiker*, 679 F.2d 223, 227 (11th Cir. 1982).

The Court also finds that there is not substantial evidence in the file to support the ALJ's finding that the only issue before him was waiver.   As previously stated, the administrative record contains no information as to how the overpayment was determined or calculated.   Nor does the record contain the initial letter informing  Plaintiff of the SSA's assertion of an overpayment.   The first entry is a log beginning July 29, 2002, which indicates that Plaintiff called the SSA to file a waiver, and that SSA Form 632 was then mailed to her (Tr. 20).   The log next contains an entry stating that Plaintiff believed the overpayment determination was in error and her attorney would contact SSA.   There is no indication that any form other than the Form 632 waiver was sent to her.   The completed waiver form was submitted (Tr. 21-27), but does not contain a place to contest the overpayment amount.

A personal conference was held on May 17, 2003 (Tr. 31).[9]  Plaintiff subsequently

---

[9]The brief notes on the personal conference do not reflect whether discussion of the asserted overpayment amount occurred.    However, the notes contain the same unsupported statement, which, apparently, the ALJ later relied upon, that Plaintiff did not question that the SSA benefits remained the same even reporting receipt of workers compensation to the SSA.   The uncontroverted testimony and initial award letter from the SSA reflect the SSA was aware of the workers compensation benefits from the start and indicate it made some offset deduction (Tr. 148, 82-84).

received a letter stating the overpayment amount was $10,884,[10] and  because she was

at fault it cannot be waived (Tr. 34-36).   Plaintiff's attorney timely asked for a hearing on

the waiver within the 60 day period and also indicated he wanted information on how the

overpayment was calculated (Tr. 37-38).

At the beginning of the hearing before the ALJ, the ALJ stated, "Now the question

before us is whether or not there was an overpayment in this case, and whether the

claimant was, was without fault."  (Tr. 143.)[11]   The ALJ then stated, "the amount in

controversy is $8,653, is that correct?" (Tr. 144.)  Plaintiff's attorney responded that he had

not seen that amount listed in the file (Tr. 144).  The ALJ asked if the SSA had ever given

Plaintiff an accounting and was told it had not (Tr. 144-45).  The ALJ stated he would try

to obtain the information and proffer it to Plaintiff (Tr. 163).

The Court does not find that Plaintiff has failed to pursue her administrative remedy

as to demanding proof of the overpayment.  Under 20 C.F.R. § 404.902(j), determination

of an overpayment is a matter subject to administrative and judicial review.   The SSA log

reflects Plaintiff voiced her concern about the determination in a followup telephone call,

but there no indiction in the record that the SSA ever mailed Plaintiff any forms aside from

the waiver request.  Plaintiff's attorney raised the matter in the request for a hearing and

raised it at the hearing.

When a claimant challenges the SSA's initial determination of the amount of an

overpayment, the Commissioner must present reliable substantial evidence of the particular

---

[10]This is the first time the amount is listed in the record.

[11]This statement conflicts with another of the ALJ's statements in the decision
wherein he asserts the only issue was waiver (Tr. 14).

15

overpayments. *McCarthy v. Apfel*, 221 F.3d 1119, 1126 (9th Cir. 2000). The production of an initial determination letter is not sufficient for that purpose. *Id.* In the instant case, the initial determination letter is not even in the record.[12] The burden of proof of the fact and amount of overpayments is on the Commissioner. *Id.; Cannuni ex rel. Schweiker*, 740 F.2d 260, 263 (3rd Cir. 1984); *United States v. Smith*, 482 F.2d 1120, 1124 (8th Cir. 1973).

Since there is no information in the record as to when the overpayment occurred or how it was calculated, Plaintiff's attorney was fighting a ghostly opponent in arguing Plaintiff was without fault.

The Court recognizes that the remand may not lead to a different result for Plaintiff. The Commissioner may be able to produce evidence showing Plaintiff was at fault. Or, even if there is a subsequent finding that she is not at fault, the Commissioner may still find Plaintiff is not entitled to waiver.[13] Either way, the Court does not find it necessary to rule at this time on whether there was substantial evidence to support the finding that Plaintiff was not entitled to waiver under 20 C.F.R. §§ 404.506 and 404.508. As the ALJ noted at the February 2005 hearing, that determination should be made on updated financial and expense information that is current and provided at the time of any hearing.

---

[12]At the hearing, the ALJ said the amount of the overpayment was $8,653, while Plaintiff's attorney noted that the letter initially advising her of a declination of her waiver identified the amount at $10,884 (Tr. 144, 34). The difference may be accounted for by the fact SSA had been deducting $100 a month from her check during the appeal process (Tr. 154), but that is speculation. Whatever document the ALJ used to ascertain the $8,653 amount is not in the record.

[13]The burden of proof on whether waiver should be granted is on the Plaintiff.

16

## IV.  Conclusion

For the reasons stated, the decision of the Commissioner is **REVERSED** and the case is **REMANDED** to the Commissioner for further proceedings, which shall include providing Plaintiff with information on when the alleged overpayment occurred and how the amount was calculated.  Should the Commissioner still believe that Plaintiff was not without fault for any overpayment determined, Plaintiff shall be afforded the opportunity to request waiver.

## V.  Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.  The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits.  *See Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1278 (11th Cir. 2006); *compare* Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a).

**DONE AND ORDERED** at Jacksonville, Florida this 27th day of March, 2008.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to counsel of record